IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| SCARLETT REYNA and MARIA ORTEGA, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CONAGRA FOODS, INC. and PILGRIMS ) <br> PRIDE CORPORATION OF DELAWARE, ) <br> INC. as Successor-in-Interest to CONAGRA ) <br> POULTRY COMPANY, ) <br> ) <br> Defendants. ) | Civil Action <br> No. 3:04-cv-39 |

*ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

Before the Court is Plaintiffs' Motion for Partial Summary Judgment [Doc. 23] wherein Plaintiffs move for summary judgment on their claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 *et seq*, for unpaid overtime wages. Defendants have also filed a Motion for Summary Judgment [Doc. 30] wherein they, in part, cross move for summary judgment on Plaintiff's FLSA claims for unpaid overtime compensation.[1] Upon due consideration of the arguments of counsel, the evidence in the record, and the relevant legal authorities, the Court finds that there are no genuine issues of material fact as to liability under the FLSA and that Plaintiffs are entitled to judgment on liability as a matter of law; the amount of damages, however, must be

---

[1] In their Motion for Summary Judgment, Defendants move for summary judgment on all of Plaintiffs' claims filed in this action. In this Order, the Court addresses only Defendants' arguments regarding Plaintiff's FLSA claims for unpaid overtime wages. The Court will address Defendants' remaining arguments in a separate order.

1

proven at trial. Therefore, Plaintiffs' Motion for Partial Summary Judgment [Doc. 23] is **GRANTED** *as to liability only*, and Defendants' Motion for Summary Judgment regarding Plaintiffs' FLSA claims for unpaid overtime wages is DENIED as to liability; the amount of damages must be proven at trial.

## BACKGROUND

Defendant ConAgra Foods, Inc. ("ConAgra")[2] owned and operated a fresh chicken processing plant located in Athens, Georgia, where, at all times relevant to the claims currently at bar, Plaintiffs were employed in the Human Resources Department ("HR"). Both Plaintiffs were designated as salary non-exempt employees, paid on an hourly basis.

ConAgra required its salary non-exempt employees to use a time card system to clock in and out of work. ConAgra used this time card system for tracking the number of hours those employees worked. Although disputed by Defendants, the evidence shows that ConAgra also used the time card system to pay its employees. ConAgra's policy entitled "Time Cards" stated:

> The Company utilizes a manual time recorded system for all salary non-exempt. ***The entry of time will be the official record for which your bi-weekly pay is figured***. You will be responsible for:
>
> 01. Punching in each day prior to the start of your shift.
> 02. Punching out each day at the end of your shift.
> 03. Punch[ing] out anytime you leave the Company property and back when you return.
> 04. Punch[ing] in and out anytime you report to the Company to perform work outside your regular schedule.

---

[2] On November 24, 2003, ConAgra sold its poultry company to Defendant Pilgrim's Pride.

> 05. All Supervisors must sign time cards at the end of the week. Immediate Supervisor must approve any hours worked other than regularly scheduled.
>
> You will be responsible for properly clocking in. The act of altering a time card, clocking in for another employee or allowing another employee to clock you in or out will be considered as a basis for disciplinary action up to and including termination. Everyone needs to be at their workstation and ready to work by their starting time.

(Reyna depo., Exhibit 5) (emphasis added).

As salary non-exempt employees, Plaintiffs clocked in and out of work using ConAgra's time card system and were paid on a bi-weekly basis according to the number of hours worked. (Reyna depo. Exhibit 5; Harris depo. p. 72; Hoggard depo. p. 78; Laur depo. p. 96). The number of hours Plaintiffs worked would be totaled up and then keyed into the computer system by the company controller in the accounting department. The parties dispute who was responsible for totaling the number of hours shown on the time cards. Plaintiffs claim their supervisor was responsible for totaling the number of hours, while Defendants claim the employees were responsible. Regardless of who was responsible, at the very least, the time cards were reviewed by the supervisor and the total number of hours was submitted to the supervisor for approval. The HR Manager also performed random audits of the time recorded on the time cards, in an effort to track the amount of overtime worked and to determine any problems with employees reporting to work. (Hoggard depo. p. 77).

HR also required its employees to submit a time sheet breakdown form summarizing the amount of hours each employee worked during the bi-weekly pay period. It is unclear to this Court whether the employees prepared these time sheets, or

whether the supervisors prepared them. It is also unclear to this Court what purpose these summary time sheets served, as ConAgra's time card policy states that the time cards were "the official record for which [the employees'] bi-weekly pay [was] figured." (Reyna depo. Exhibit 5). Both the time cards and the summary time sheets were maintained in the HR office.

Although HR had a policy discouraging overtime, employees who worked in HR, "pretty much averaged overtime every week." (Hoggard depo. 65-67). In response to the HR manager's concern about "excessive overtime," between January and February of 2003, HR instituted a "sign up book" where, if employees needed to work overtime, they were instructed to sign the book requesting overtime and describe the reasons why they needed to work overtime. (Hoggard depo. p. 66; Reyna depo. p. 81; Ortega depo. p. 89). The shift supervisor would then approve or disapprove the request for overtime. Id. Plaintiffs assert that, regardless of whether a request for overtime was approved or not, they still worked overtime but just did not get paid for the work. Plaintiffs claim they were only allowed to claim they worked the regular forty hours per week and were not compensated for the unapproved overtime they worked. (Reyna depo p. 82-83; Ortega depo p. 89, 97). Plaintiffs acknowledge that although they were paid some overtime, they were not fully compensated for all of their overtime work performed. Defendants counter that all hours worked were paid, whether pre-approved by a supervisor or not. (Hoggard depo. 78).

Ortega asserts that she was not fully compensated for her overtime work performed from May 20, 2002 through the week ending on September 20, 2003. Ortega

4

states the time cards she submitted to ConAgra reflect that she worked 224.43 hours of overtime, but ConAgra's payment records show that she was only paid for 50.89 hours of overtime. Defendants argue Ortega was fully paid for all overtime worked.

Reyna asserts that she was not fully compensated for her overtime work performed from the week ending September 25, 2001 through the week ending September 20, 2003. Reyna argues that the time cards she submitted to ConAgra reflect that she worked 160.08 hours of overtime, but ConAgra's payment records show that she was only paid for 27.71 hours of overtime. Defendants argue Reyna was fully paid for all overtime worked.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52. In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

5

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323.

When a district court is, as here, presented with cross motions for summary judgment on the same issue, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2720, at 335-36 (3d ed. 1998). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. See United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984).

**DISCUSSION**

FLSA Violations

The FLSA requires employers to pay overtime to employees who are employed more than forty hours per week. 29 U.S.C. § 207(a)(1); Dade County v. Alvarez, 124 F.3d 1380, 1384 (11th Cir. 1997). The term "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g); Reich v. Dept. of Conservation & Natural Res., 28 F.3d 1076, 1082 (11th Cir. 1994). In order for Plaintiffs to recover for uncompensated overtime work under the FLSA, Plaintiffs must prove that (1) they worked overtime hours without compensation, and (2) Defendants had knowledge, or should have had knowledge, of their overtime work. Id. at 1082. The employee bringing suit for overtime wages under the FLSA has the burden of proving that she performed work for which she was not properly compensated. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). Once Plaintiffs have established their burden, the burden then shifts to Defendants to produce evidence "to neg[ate] the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Donovan, 676 F.2d at 471.

The Court finds that Plaintiffs have met their burden of showing that they performed overtime work for which they were not properly compensated. The time cards Plaintiffs submitted in support of their motion for partial summary judgment show the exact times that Plaintiffs clocked in and out of work, and Defendants' payroll records clearly show that Plaintiffs were not compensated for all of those hours.

7

Defendants argue that Plaintiffs do not meet their burden of establishing that they worked overtime hours without compensation because (1) Plaintiffs fail to identify the weeks in which they worked unpaid overtime; (2) Plaintiffs' claims for overtime compensation are contradicted by periods of vacation, holiday and other leave reflected in Plaintiffs' payroll records; and (3) Plaintiffs' "missed punches" on the time cards preclude summary judgment. The Court finds these arguments without merit. Plaintiffs clearly identify the time periods they worked unpaid overtime: they claim Ortega was underpaid for overtime hours worked from May 20, 2002 through September 20, 2003, and Reyna was underpaid for overtime hours worked from September 25, 2001 through November 17, 2001, from April 8, 2002 through August 31, 2002, and from September 9, 2002 through September 20, 2003. For each of these time periods, Plaintiffs have provided the time cards reflecting the amount of hours worked, and the payroll records reflecting the hours for which Plaintiffs were paid. This evidence further shows the weeks Plaintiffs claim they worked unpaid overtime. While Defendants are correct that Plaintiffs' vacation, holiday, and other leave time may be excluded from overtime pay, see 29 C.F.R. § 778.218(a), and that there are "missed punches" on the time cards, such evidence does not preclude summary judgment. Upon review of the time cards and payroll records, it is clear that on days where Plaintiffs took *no* vacation, holiday or other leave time, and on days where there are *no* "missed punches," Plaintiffs worked overtime hours for which they were not properly compensated. Plaintiffs' leave time and "missed punches," however, must be considered in the computation of damages, which, as explained below, will need to be determined at trial.

Plaintiffs have also proven that Defendants had actual knowledge of their overtime hours worked. "[A]n employer's knowledge is measured in accordance with his duty to inquire into the conditions prevailing in his business." Reich, 28 F.3d at 1082 (citations and internal quotations omitted). An employer "does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. The cases must be rare where prohibited work can be done and knowledge or the consequences of knowledge avoided." Id. (citations and internal quotations omitted). Thus, "[i]n reviewing the extent of an employer's awareness, a court need only inquire whether the *circumstances* were such that the employer either had knowledge of overtime hours worked or else had the opportunity through reasonable diligence to acquire knowledge." Id. (emphasis in original) (internal citations, quotations, and punctuation omitted). Accordingly, when an employer has actual or constructive knowledge of overtime worked, the employer may not escape liability for uncompensated overtime work merely by prohibiting overtime labor: an employer's "mere promulgation of a rule against [overtime] work is not enough. Management has the power to enforce the rule and must make every effort to do so." Id. at 1083 (citing 29 C.F.R. § 785.13) (internal quotations omitted).

Plaintiffs provided Defendants with daily time cards establishing the exact number of hours that they worked, and Defendants admit to receiving those time cards. Furthermore, even assuming Plaintiffs' supervisor did not total the time which was submitted to payroll, the supervisor at least reviewed the time and approved the total number of hours worked. These facts clearly establish that Defendants had actual

9

knowledge that Plaintiffs were working overtime.  See Kissel v. U.S. Steakhouse Bar & Grill, Inc., 2006 WL 2850105, *3 (M.D. Fla. 2006) (defendants had actual knowledge of the hours plaintiff worked through the submission of her time cards).  The fact that HR had a policy that all overtime must be approved does not shield Defendants from liability under the FLSA.  See Reich, 28 F.3d at 1082.

Defendants argue that they cannot be charged with knowledge of Plaintiffs' uncompensated overtime because Plaintiffs signed and approved their time card summaries and bi-weekly tally sheets reflecting less hours than those actually worked.  Defendants argue that based on these facts, Plaintiffs submitted false and inaccurate time reports, and therefore Defendants had no knowledge of unpaid overtime.  In support of their contention, Defendants rely on commonly-cited cases holding that an employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing the claimed overtime did not occur.  See Gaylord v. Miami-Dade County, 78 F. Supp. 2d 1320, 1325 (M.D. Fla. 1999) (citing Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972); Newton v. City of Henderson, 47 F.3d 746, 748-49 (5th Cir. 1995); Davis v. Food Lion, 792 F.2d 1274, 1277-78 (4th Cir. 1986); and Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981)). Defendants' reliance on these cases, however, is misplaced.  In each of these cases, the plaintiffs were responsible for reporting their working hours, with the employers having no knowledge of the plaintiffs' off-the-clock hours and no reason to know that the reported information was inaccurate.  In contrast, here, Defendants had actual knowledge that Plaintiffs were working overtime via ConAgra's own time clock

system showing the exact amount of hours Plaintiffs worked. Furthermore, regardless of whether the employees or the supervisors were responsible for totaling the number of hours for payroll purposes, the HR supervisors and the HR manager actually received the time cards showing the exact amount of time worked and were responsible for reviewing those time cards.

Although the parties dispute the reasons why the calculations submitted to payroll were different from the hours worked as shown on the time cards–with Plaintiffs claiming they were not allowed to report the overtime on the time sheets, and Defendants claiming Plaintiffs falsified the hours–such dispute does not create a genuine issue of material fact. Regardless of the reasons why Plaintiffs' pay reflected less hours than Plaintiffs actually worked, Defendants had in their possession Plaintiffs' time cards showing the actual number of hours worked. "The reason an employee continues to work beyond his shift time is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be compensated." Reich, 28 F.3d at 1082 (citing 29 C.F.R. § 785.13).

In their Motion for Summary Judgment, Defendants contend that they are entitled to summary judgment because Plaintiffs were, in fact, paid for all of their overtime hours worked. Defendants dispute the time periods for which Plaintiffs claim unpaid overtime. When asked at their depositions, Plaintiffs testified that they were seeking unpaid overtime for a time period different from the time periods for which Plaintiffs now claim they are owed unpaid overtime. Defendants argue that based on the time periods Plaintiffs identify in their depositions, ConAgra's records reflect that

Plaintiffs were, in fact, fully compensated. Defendants point to Ortega's deposition testimony wherein she stated that she was not fully compensated for the overtime hours she worked during the eight month time period between December 2002 and August 2003, not from the fourteen month time period between May 20, 2002 and September 17, 2003, as she now claims. Defendants point to their payroll records showing that during the eighth month period claimed in her deposition, Ortega was paid for 158.72 hours of overtime, not 50.89 hours of overtime Ortega claims she was paid for the longer fourteen month time period. Likewise, Defendants point to Reyna's deposition testimony wherein she stated that she was not fully compensated for the overtime hours she worked for the nine month time period between January and September 2003, not the two year time period between September 20, 2001 and September 17, 2003 she now claims. Defendants state that for the nine month time period claimed in her deposition, Reyna was paid for 62.54 hours of overtime, not 27.71 hours Reyna claims she was paid for the longer two year time period.

Defendants argument fails. As Plaintiffs state in their Reply brief, while Plaintiffs may not have realized or been aware of the full extent of Defendants' violations of the FLSA, it does not change the reality that these violations occurred. It is no defense to an overtime claim to rely upon what may have been a lapse in memory or a mistake on the part of the Plaintiffs as to the amount of overtime worked when the evidence is clear that overtime was worked and was not paid. See <u>Alexander v. Vesta Insur. Group, Inc.</u>, 147 F. Supp. 2d 1223, 1240 (N.D. Ala. 2001) (court refused to impose a limit upon plaintiffs' potential recovery on their FLSA claims based upon what

may have been imperfect memories on the part of plaintiffs at their depositions). Furthermore, although the parties' calculations of overtime hours worked differ, Defendants' calculations do not establish that Plaintiffs were paid for all of the overtime worked. On the contrary, the evidence reflects that Plaintiffs were improperly compensated for the amount of overtime hours worked.

Statute of Limitations

In their response brief to Plaintiff's Motion for Partial Summary Judgment, Defendants raise, for the first time, a statute of limitations issue. Generally speaking, "[o]rdinary violations of the FLSA are subject to the general 2-year statute of limitations." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 135 (1988). However, a finding of willful violations subjects an employer to a three year, rather than two year, statute of limitations in an action for unpaid overtime compensation. See id. at 128. "To establish a willful violation of the FLSA, [Plaintiffs] must show that the [Defendants] either knew or showed a reckless disregard for the matter of whether its conduct was prohibited by the statute." Palmer v. Stewart County Sch. Dist., 178 Fed. Appx. 999, 1005 (11th Cir. 2006) (citing McLaughlin, 486 U.S. at 133).

Defendants contend that Plaintiffs' FLSA claims are limited to overtime worked during the two years preceding the filing of their complaint, from May 20, 2002 through September 17, 2003, the date Plaintiffs were terminated. In their reply brief, Plaintiffs state that both of their overtime claims do not extend back further than two years from the date of filing, indicating that they concede the two year statute of limitations period applies for both claims. However, pursuant to the Court's review, Plaintiffs assert that

Reyna is owed unpaid overtime from September 25, 2001 through November 17, 2001 and from April 8, 2002 through August 31, 2002, some time of which is clearly prior to the two years preceding the filing of their complaint.

Because neither Plaintiffs nor Defendants moved for summary judgment on whether the two or three year statute of limitations applies (addressing the issue only in their response and reply briefs), the Court will delay its decision on this issue until trial, when the parties can clarify their positions.

Damages for Unpaid Overtime and Liquidated Damages

The FLSA provides that an employer who violates sections 206 or 207 of the Act will be liable to an employee in the amount of the employee's unpaid overtime compensation "and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); Kennedy v. Critical Intervention Servs., Inc., 199 F. Supp. 2d 1305, 1306-07 (M.D. Fla. 2002). An exception to that rule exists, however, "if the employer can show to the satisfaction of the court that the act or omission giving rise to the [FLSA] violation was in good faith and that the employer had reasonable grounds for believing that its act or omission did not violate the FLSA." Kennedy, 199 F. Supp. 2d. at 1307; see also 29 U.S.C. § 260. This good-faith exception set forth in 29 U.S.C. § 260 is an affirmative defense, on which the employer bears the burden of proof. Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1191 n.18 (5th Cir. 1979); Cusumano v. Maquipan Int'l., Inc., 390 F. Supp. 2d 1216, 1218-23 (M.D. Fla. 2005).

The determination of whether an employer acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA has

both a subjective and objective component. Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1566 (11th Cir. 1991). Subjective good faith means the employer had an honest intention to ascertain what the FLSA requires and to act in accordance with it. Id. Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA. Id. In addition, "[g]ood faith requires some duty to investigate potential liability under the FLSA." Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 469 (5th Cir. 1979). An employer who knew or had reason to know that the FLSA applied cannot establish good faith as a defense. Reeves v. Int'l. Tel. & Tel. Corp., 616 F.2d 1342, 1352-53 (5th Cir. 1980). Liquidated damages are mandatory where the employer fails to show good faith. Spires v. Ben Hill County, 980 F.2d 683, 689 (11th Cir. 1993).

Defendants have failed to show they acted in good faith, and therefore, the Court finds that Plaintiffs are entitled to both damages for unpaid overtime and liquidated damages. As discussed above, Plaintiffs have proven that they worked overtime hours for which they were not compensated. Accordingly, they should be compensated for all unpaid overtime hours worked. Furthermore, the Court finds that Plaintiffs are entitled to additional liquidated damages, equal to the amount of unpaid overtime. There is no fact issue precluding a finding that Plaintiffs are entitled to liquidated damages as a matter of law. The evidence shows that Defendants knew Plaintiffs were working over forty hours per week but nevertheless failed to pay them for all overtime hours worked. Defendants argue that because Plaintiffs submitted and approved the time sheets that reflected less hours worked than those reflected on the time cards, liquidated damages

are not warranted. Defendants' reliance on these time sheets, however, does not prove that they had subjective or objective good faith. Defendants have pointed to no evidence showing either that they had an honest intention to ascertain what the FLSA required and to act in accordance with it, or that they had reasonable grounds for believing their conduct comported with the FLSA.

Defendants have, however, raised genuine issues of material fact as to the amount of damages owed to Plaintiffs, namely whether Plaintiffs' calculations made in their brief have accounted for rounding practices permissible under the FLSA and whether such calculations have accounted for vacation, holiday, sick, and other leave time. Furthermore, the Court is unable to discern the method by which Plaintiffs arrived at their final calculations of overtime owed. Therefore, damages must be proven at trial.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment [Doc. 23] is **GRANTED** *as to liability only;* the amount of damages must be proven at trial.

**SO ORDERED**, this the 11th day of December 2006.

S/ C. Ashley Royal  
C. ASHLEY ROYAL  
United States District Judge

SSH/aeg